FIRST TOWER CORP., Appellant, *v.* EDMUND L. FRENCH, Defendant-Respondent and Third-Party Plaintiff-Respondent. G. RUSSELL EDDY, Third-Party Defendant-Appellant.

Fourth Department, June 27, 1974.

*Saperston, Wiltse, Day & Wilson* (*Frank Gaglione* of counsel), for First Tower Corp. and another, appellants.

*Yaffee & Yaffee* (*Victor Hershdorfer* of counsel), for respondent.

MARSH, P. J. This is an appeal from a judgment entered pursuant to an order which granted summary judgment to defendant-third-party plaintiff French on certain counterclaims asserted by French in an action initiated by First Tower Corporation by way of a petition to recover possession of real property.

For many years prior to the action herein, French was the apparent owner and occupant of three cottage lots located in the Town of Tully, Onondgaga County, New York, described

as Farm Lot 48 — Lots 32, 33 and 34. County taxes on said lots had been unpaid for several years. Sometime between October 1, 1966 and October 1, 1968, First Tower Corporation took an assignment of a tax sale certificate based upon 1966 delinquent county taxes. Subsequent to the redemption period provided by section 8 of the Onondaga County Tax Law (L. 1937, ch. 690, as amd. by L. 1964, ch. 768, § 2), First Tower obtained a tax deed from the Onondaga Commissioner of Finance dated January 26, 1970 which deed was recorded March 16, 1970. (L. 1937, ch. 690, § 9.)

On April 2, 1970 French was notified by letter of First Tower's claim of ownership. French consulted counsel to set aside the tax deed. Nevertheless, in view of his desire to occupy the cottage property during the approaching summer season, French entered into a lease with First Tower whereby French agreed to rent the lots for a term of five months for a seasonal rent of $550. The lease contained a provision which would entitle First Tower to the sum of $50 for each week that French remained in possession of the property after expiration of the lease term without executing a renewal lease. By a stipulation contained in paragraph 14th of the lease it was agreed that the lease constituted no admission by French of the validity of the tax deed and French therein reserved his right to contest it.

At the termination of the lease on September 30, 1970, French personally vacated the premises but did not remove certain furniture, clothing and personal effects. On October 21, 1971, First Tower instituted a summary proceeding for the recovery of the premises, demanding a judgment in the amount of $2,700, representing past rent allegedly due at the rate of $50 per week from the expiration of the lease. Petitioner contended that the presence of French's personal property constituted continued possession and occupancy of the leasehold. In February, 1972 French interposed an answer which generally denied petitioner's allegations and set forth two counterclaims. The first counterclaim sought to compel a determination of claims to the subject property pursuant to article 15 of the Real Property Law. Alleging that the tax deed issued to petitioner was void for reasons of inadequate description of the property on the deed, assessment roll and notice of tax sale and for failure to post notices of the tax roll for 1966, French sought relief barring petitioner from the property and declaring French to be absolute owner. The second counterclaim sought recovery of the $550 rental paid by French to First Tower together with $1,760 for damages allegedly resulting from petitioner's "wrongful

exclusion '' of French during the months following expiration of the lease.

Simultaneously with service of his answer, French commenced a third-party action against G. Russell Eddy, Treasurer of First Tower Corp. Eddy had obtained two tax deeds purporting to convey the French property, the first deed — dated October 30, 1970 and recorded February 19, 1971 — was based on unpaid 1967 taxes, and the second — dated September 7, 1971 and recorded December 10, 1971 — was based on unpaid 1963 taxes. In the third-party action it was alleged that the above deeds were void for reasons identical to those asserted against the deed to First Tower (improper descriptions and posting of notices).

French moved for summary judgment in the proceeding, based upon the counterclaims as alleged in his answer and third-party complaint. By an order dated May 15, 1973 the court granted respondents' motion, ordered all tax sales certificates and tax deeds in favor of First Tower and Eddy to be canceled by the Commissioner of Finance, and ordered First Tower and Eddy jointly to execute and deliver a quitclaim deed conveying all interests in the subject property to French upon the latter's payment of $3,048.77 to counsel for petitioner and third-party defendant. This amount represents property taxes paid by First Tower and Eddy in securing the three tax deeds from the county, costs of filing the deeds, and moneys paid as school and property tax in 1971. The order denied, however, respondents' claim for a refund of $550 as rent paid on the 1970 property lease.

First Tower and Eddy have appealed from this order granting summary judgment and from a subsequent judgment entered June 1, 1973, which provides that French be entitled to recover the sum of $290.50 as costs and disbursements in the action herein.

The first basis for invalidity of the tax deeds alleged by French is the failure to post the notice of receipt of the tax roll and warrant as required by section 920 of the Real Property Tax Law. The Receiver of Taxes for the Town of Tully was required to publish the tax roll once a week for two successive weeks in the official town newspaper and, in addition, to post it on the sign board for legal notices at the entrance to the Town Clerk's office. The Court of Appeals in *Werking* v. *Amity Estates* (2 N Y 2d 43) held that failure properly to post on appropriate sign boards the tax roll and warrant as required by the Tax Law (then Tax Law, § 69, now Real Prop-

erty Tax Law, § 920) is a jurisdictional defect. In *Werking* the Receiver of Taxes posted in only one place and left the remaining places to be posted by the Postmaster, for which posting he could not attest (the former section 69 of the Tax Law required posting in five conspicuous places, as opposed to one posting required by section 920 of the Real Property Tax Law). Also in *Werking* the notice itself was defective in providing only six days for collection in a 30-day period as opposed to the statutory requirement of 12 days. Nor did the notice provide for the proper hours required by section 69. The Court of Appeals concluded that the defective content and posting of the notices amounted to a lack of substantial compliance with the statute, creating a jurisdictional defect.

Sale of tax certificates and the conveyance of tax deeds with respect to real property located in Onondaga County are governed by a special tax law (L. 1937, ch. 690) rather than the Real Property Tax Law. Section 6 of chapter 690 of the Laws of 1937 provides that six months after the real property tax is due (Feb. 1) the County Treasurer must publish once each week for three weeks a statement of the taxes and charges due with respect to property subject to delinquent taxes and a notice that the property will be sold for satisfaction of such taxes. Upon the sale of the property for the satisfaction of the delinquent taxes, the Commissioner of Finance issues a certificate of sale which is evidence of the sale and that all proceedings prior to the sale were regular, including the assessment (L. 1937, ch. 690, § 7). A property owner has two years from the last day of sale to redeem the property upon payment to the purchaser holding the tax sale certificates of the amount of taxes plus 8% interest. A mortgagee has three years from the date of sale to redeem (L. 1964, ch. 768, § 8, as amd.). Upon the expiration of the redemption period, the Finance Commissioner of the county will issue a tax deed to the purchaser at the tax sale (L. 1937, ch. 690, § 9). The tax deed is conclusive evidence of the regularity of the sale and presumptive evidence that all requirements and notices have been complied with and after recording the deed, the presumption is conclusive.

"After the date of the recording of any such deed, such presumption shall be conclusive, the sale and conveyance thereof shall become absolute, and the occupant and all others interested in the land be forever barred from all liens upon, claims against, interest in or right or title thereto." (L. 1937, ch. 690, § 10.)

In construing a similar provision of the prior tax law (Tax Law, § 131), the Court of Appeals in *Werking* construed the language, making title absolute and the presumption of regularity conclusive as not having application where the tax roll is void because of a jurisdictional defect. Since *Werking* states that failure to post in accordance with the statute results in a jurisdictional defect, the conclusive presumption of section 10 of chapter 690 of the Laws of 1937 would not bar respondent third-party plaintiff French from asserting the lack of posting of the tax roll and the warrant. Assuming the two-year provision of section 1020 of the Real Property Tax Law has application, two years had not expired at the time of the commencement of petitioner's proceeding or at the time of the service of respondent third-party plaintiff's counterclaim in which is asserted the invalidity of the tax deeds. The earliest deed to First Tower Corp. was recorded on March 16, 1970 and the counterclaim was subscribed on February 1, 1972. A reply to the counterclaim was dated March 14, 1972, which establishes that it was served within two years of the recording of the first recorded deed at issue.

Our determination in light of *Werking* v. *Amity Estates* (2 N Y 2d 43, *supra*), that a total failure to post the tax roll and warrant on the town sign board at the entrance to the Town Clerk's office would constitute a jurisdictional defect permitting the setting aside of any tax sale certificate or tax deed, brings to the fore the question whether respondent French has produced evidence in his supporting papers on the summary judgment motion tending to establish lack of posting. The affidavit of French's counsel, David A. Yaffee, merely states that he investigated the records of the Town of Tully and found no record of the posting of the tax roll and warrant on the bulletin board leading to the entrance of the Town Clerk's office for the tax years 1963, 1966 and 1967. In addition, Yaffee wrote two letters to Lillian Bigsby, the Receiver of Taxes for the Town of Tully during the years 1966 and 1967. In the two letters he asked Lillian Bigsby what publishing and posting of notices of the tax rolls were performed in 1966, 1967 and 1963. She responded to the first letter that they were published in the *Tully Independent* newspaper with dates for collection from January through March at her home. On the second letter she noted that a Mary Dunn was the collector in 1963, and related a conversation with her indicating that the notices were printed in the *Tully Independent* providing for the collection of taxes at her home during January, February and March.

In neither of the responses is any mention made concerning the posting of the tax roll on the town sign board. It cannot be inferred however that she did not post on the town sign board, merely because she does not mention it in her short written response. The value of Yaffee's statement that he checked the town records and could find no evidence of posting in the records would appear to be questionable where there does not appear to be a requirement for filing an affidavit with respect to publishing and posting the tax roll. If there is no requirement to file, a search of the records indicating no such filing cannot be asserted as establishing the failure to post. The evidence supplied on the summary judgment motion by respondent third-party plaintiff does not establish the lack of posting and is totally unpersuasive in that regard. The presumption of regularity provided by the Onondaga County Tax Act remains unrebutted and requires a trial upon the issue of posting (*Werking* v. *Amity Estates, supra*; *Dromgoole* v. *White*, 19 A D 2d 567).

The further questions raised by respondent third-party plaintiff concern the sufficiency of the descriptions of the subject premises in the assessment, the notices of tax sale, the notices for expiration of the period of redemption and the tax deeds themselves. The description in respondent French's deed provides:

"ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Tully, County of Onondaga and State of New York, bounded and described as follows:

"Being part of Lot 48 of said Town of Tully, County of Onondaga and known and distinguished as Lots 32, 33 and 34 of the Tully Lake Park Association Lands, according to a map made by Alfred R. Edgerton and filed in the Onondaga County Clerk's Office July 18, 1892."

The description in the deeds in question reads: "All that piece or parcel of land situate in the Town of Tully, County of Onondaga, New York, described as follows; viz: Farm Lot 48 — Lots 32, 33, 34 including right, title and interest therein of Edmund L. French."

The question of the adequacy of the description appears to be substantially the same whether we are dealing with a tax deed description, a description in the assessment rolls or a description in the tax sale notice. Pertinent to the issue of the adequacy of the descriptions is the language of the Court of Appeals in *Goff* v. *Shultis* (26 N Y 2d 240, 245). "But most of the cases which arise in this field of law are beset by more

or less patent errors; and the critical question is not that there are errors, but whether the land can be identified with reasonable certainty notwithstanding the errors.'' (See, also, *Kiamesha Development Corp.* v. *Guild Props.*, 4 N Y 2d 378; L. 1937, ch. 690, § 6, as amd. by L. 1949, ch. 843, § 1.)

It cannot be determined upon the basis of the existing record whether the description contained in the tax deed, the tax sale notice or the assessment describes the subject property so that it can be identified with reasonable certainty. Such a determination should await testimony relating to the adequacy of the description of the premises sought to be described.

There are issues of fact concerning the validity of the deeds in question which require a plenary trial and necessitate the denial of respondent third-party plaintiff's motion for summary judgment.

The order and judgment appealed from should, therefore, be reversed and respondent third-party plaintiff's motion for summary judgment denied.

WITMER, MAHONEY, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment and order unanimously reversed with costs and motion for summary judgment denied.